UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
SHANGHAI SHENDA II LLC,

                             Plaintiff,

              -against-                              Case No.

STEVEN FEINSTEIN,

                          Defendant.
-----------------------------------------------------------------------X

## COMPLAINT

Plaintiff Shanghai Shenda II LLC, by and through its attorneys, Kurzman Eisenberg Corbin & Lever, LLP, complaining of defendant Steven Feinstein, alleges as follows:

## THE PARTIES

1.     Plaintiff Shanghai Shenda II LLC ("Plaintiff," "SS II," or the "Company") is a limited liability company organized and existing under the laws of the State of New York, located at 222 West 37th Street, 2nd Floor, New York, New York 10018.  The sole member of SS II is Shanghai Shenda (America), LLC ("SSA"), a limited liability company organized and existing under the laws of the State of New York.  The members of SSA are: i) Shanghai Shenda Import & Export Co, Ltd, a limited company organized and existing under the laws of China, with its principal place of business in China; and ii) Hudson Valley (New York) Ltd., a limited company organized and existing under the laws of the State of New York, with its principal place of business in New York.

2.     Defendant Steven Feinstein ("Defendant," "Feinstein," or the "Executive") is a citizen of the State of Connecticut located at 6 Peabody Lane, Westport, Connecticut, 06880.

## JURISDICTION AND VENUE

3.      This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because of diversity of citizenship and because the matter in controversy exceeds the sum of $75,000.00.

4.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because the claim arose in this judicial district and the Key Employment Agreement dated June 17, 2015 (the "Employment Agreement") provides that Feinstein "expressly consent[ed] to the jurisdiction of . . . federal courts located in New York County, New York, for all actions arising out of or relating to th[e] Agreement."

## FACTUAL BACKGROUND

5.      On or about June 17, 2015, SS II purchased certain business assets of MM&R, Inc. (the "Transaction") and used those assets in the operation of SS II's clothing design and distribution business (the "Business").

6.      MM&R, Inc. was owned, in part, by Feinstein.

7.      In connection with the Transaction, Feinstein received significant consideration, including his and his wife's release from an unlimited personal guaranty, which was replaced with a limited personal guaranty.

8.      In furtherance of the Transaction, also on or about June 17, 2015, SS II and Feinstein entered into an employment agreement concerning Feinstein's employment with SS II and setting forth the terms and conditions of Feinstein's employment with SS II (the "Employment Agreement").

9.      Feinstein entering into the Employment Agreement and agreeing to the terms and conditions thereof was a material inducement for SS II to consummate the Transaction.

10.     Pursuant to the Employment Agreement, Feinstein was employed as a senior executive of the Company and was responsible for managing sales, design, merchandising and production and was to perform such other duties as customarily associated with his title and as assigned by the Company's Board of Managers, Chief Executive Officer, or President.

11.     In addition, on or about June 17, 2015, in conjunction with the Transaction and the terms of the Employment Agreement, Feinstein executed a promissory note in favor of the Company (the "Note"), whereby he borrowed and was to repay the principal sum of one hundred thousand dollars ($100,000.00) (the "Loan").

12.     Under the terms of the Note, the Loan was interest-free, except if Feinstein defaulted under the Note, the Employment Agreement, or the Proprietary Information and Non-Compete Agreement.  If such default occurred, an interest rate of five percent (5%) per annum was to be applied to the Loan, retroactive to the date of default.

13.     Under the terms of the Note, if a default or breach occurred and was continuing under the Employment Agreement, the unpaid principal balance of the Note along with accrued and unpaid interest and unpaid expenses was to become, or could be declared, immediately due and payable.

14.     Under the terms of the Note, Feinstein waived any prior demand notice.

15.     Relatedly, Section 2.5 of the Employment Agreement provided that, upon the consummation of the Transaction, SS II was to extend the Loan pursuant to the Note.

16.     The proceeds of the Loan were to be applied at closing of the Transaction towards the partial payment of MMG Advisors, Inc.'s fee then due to an unrelated third party (hereinafter referred to as the "Closing Loan").

17.     As further set forth in Section 2.5 of the Employment Agreement, Feinstein agreed to repay twenty thousand dollars ($20,000.00), plus any and all accrued interest thereon (a "Repayment Installment") towards the Closing Loan, on each anniversary of the date of consummation of the Transaction (the "Effective Date"), commencing with the first such anniversary and ending with full repayment on the fifth such anniversary.

18.     Section 2.5 of the Employment Agreement also provided that any remaining principal and any accrued interest on the Closing Loan was immediately due and payable, if and when Feinstein's employment ended for any reason prior to the expiration of the term of the Employment Agreement, except due to reasons inapplicable to the instant action.

19.     The term of the Employment Agreement was from the Effective Date through the earlier of: i) December 31, 2020; and ii) the date on which the Employment Agreement was terminated pursuant to Section 6 of the Employment Agreement (the "Term").  In turn, Section 6 of the Employment Agreement provides, among other things, SS II with the right to terminate Feinstein's employment, for any reason, with or without cause.

20.     Further, Section 2.5 of the Employment Agreement stated that so long as Feinstein remained employed by SS II in good standing pursuant to the terms of the Employment Agreement, SS II would automatically make each Repayment Installment by deducting the amount of such Repayment Installment from the amount of a bonus otherwise to be paid to Feinstein on his next bonus payment date.  If the Repayment Installment exceeded the amount of the bonus, SS II would automatically deduct the balance of the Repayment Installment from Feinstein's salary ratably over the following twelve (12) months.  If and when Feinstein's employment ended for any reason, all amounts otherwise due became immediately repayable.

21.     Under Section 6.8 of the Employment Agreement, Feinstein expressly covenanted and agreed that should his employment with SS II cease for any reason prior to the expiration of the Term, except due to reasons inapplicable to the instant action, Feinstein would immediately pay SS II liquidated damages in the amount of three hundred forty thousand dollars ($340,000.00) (the "Liquidated Damages"), in addition to any other damages or amounts otherwise payable by Feinstein.

22.     The Liquidated Damages amount was based on a two hundred fifty thousand dollars ($250,000.00) benefit enjoyed by Feinstein as a result of the limitation of the personal guaranty liability of Feinstein and his spouse to FCC, LLC d/b/a First Capital ("FCC"), which benefit was effected in connection with the Transaction, plus the ninety thousand dollar ($90,000.00) lost profit opportunity cost borne by SS II as a result of the delayed closing of the Transaction.

23.     Although the Liquidated Damages amount could have been reduced to two hundred and fifty thousand dollars ($250,000.00) if FCC acknowledged in writing that SS II was released and not required to pay FCC all or any portion of the ninety thousand dollar ($90,000.00) profit in connection with the Transaction, FCC did not make such acknowledgment.

24.     From on or about June 1, 2016 through June 1, 2017, Feinstein borrowed an additional one hundred and eighty-five thousand dollars ($185,000.00) from SS II (the "Employee Loan").

25.     In or about April 2017, SS II and Feinstein agreed that, instead of crediting twenty thousand dollars ($20,000.00) of his 2016 bonus against the Closing Loan, SS II credited his

entire 2016 bonus against the Employee Loan, leaving a principal balance remaining under the Employee Loan of sixty-eight thousand four hundred thirty-three dollars ($68,433.00).

26.     On or about November 16, 2017, and despite the terms of the Employment Agreement, Feinstein made written demand on SS II that it: i) increase his salary from two hundred and seventy-five thousand dollars ($275,000.00) to three hundred and fifty thousand dollars ($350,000.00); and ii) increase his bonus from ten percent (10%) per year to twenty percent (20%) per year.

27.     SS II declined to increase Feinstein's salary or his bonus.

28.     Thereafter, on or about November 20, 2017, Feinstein gave written notice of his resignation from SS II.

29.     Under the Employment Agreement, the term "Good Reason" was limited to: i) forced relocation of the Executive by the Company to a location that is outside of a fifty (50) mile radius of Columbus Circle in New York, New York; ii) willful failure by the Company to provide the Executive his base salary, bonus, or any material benefits in accordance with the terms of the Employment Agreement, except for any reduction in benefits consistent with a general reduction or other concessionary arrangement affecting substantially all employees or substantially all senior executives; and iii) material diminution in the Executive's duties that would constitute a material demotion, with the consent of the Executive, provided, however, that if the Executive is performing duties and responsibilities for the Company or its successor that are similar to those he was performing for the Company immediately prior to such transaction, there will be no "Good Reason" for the Executive to terminate his employment.

30.     Feinstein's resignation was without Good Reason under the Employment Agreement because: i) Feinstein was not forced to relocate; ii) SS II did not willfully fail to

provide his salary, bonus, or other material benefits in accordance with the Employment Agreement; or iii) Feinstein's duties were not diminished insofar as they constituted a material demotion.

31.     On or about December 20, 2017, Feinstein's resignation from SS II became effective (the "Resignation Date").

32.     As a result of Feinstein's resignation without Good Reason before the end of the Term, he breached the Employment Agreement.

33.     As a result of Feinstein's breach of the Employment Agreement, he became liable for the Liquidated Damages.

34.     As a result of Feinstein's breach of the Employment Agreement, the amounts due under the Note and the Closing Loan became immediately due and payable.

35.     As a result of Feinstein's breach of the Employment Agreement, interest began accruing on the amounts due under the Note and the Closing Loan at the rate of five percent (5%) per annum as of the date of the breach.

36.     As of the Resignation Date, the principal balance on the Note and the Closing Loan was one hundred thousand dollars ($100,000.00).

37.     As of the Resignation Date, the principal balance on the Employee Loan was sixty-eight thousand four hundred thirty-three dollars ($68,433.00).

38.     Subsequent to the Resignation Date, Feinstein paid six thousand dollars ($6,000.00) towards the Employee Loan in twelve (12) payments of five hundred dollars ($500.00) each on the following dates: April 2, 2019, May 1, 2019, June 13, 2019, July 3, 2019, September 9, 2019, October 4, 2019, two (2) payments November 1, 2019, December 13, 2019, January 22, 2020, February 24, 2020, and March 31, 2020.  As a result, a balance of sixty-two

thousand four hundred thirty-three dollars ($62,433.00) remained due and owing on the Employee Loan.

39.     Despite no requirement that demand be made, on or about November 8, 2019, SS II, through counsel, demanded payment from Feinstein for amounts due and owing under the Note and the Closing Loan, the Employee Loan, and the entirety of the Liquidated Damages amount.

## AS AND FOR
## A FIRST CAUSE OF ACTION
### (Breach of the Employment Agreement)

40.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 39 above as if set forth more fully herein.

41.     The Employment Agreement is an enforceable agreement between SS II and Feinstein.

42.     SS II fully complied with its obligations to perform under the Employment Agreement.

43.     Feinstein breached the Employment Agreement by resigning without Good Reason (as such term is defined in the Employment Agreement) before the end of the Term.

44.     As a result of Feinstein's breach of the Employment Agreement, interest at the rate of five percent (5%) became due on the amounts owed under the Note and the Closing Loan.

45.     As a further result of Feinstein's breach of the Employment Agreement, the amounts due under the Note and the Closing Loan became immediately due and payable, including interest thereon.

46.     By reason of the foregoing, Plaintiff is entitled to judgment against Defendant in an amount to be determined at trial, but in no event less than three hundred and forty thousand

dollars ($340,000.00) in Liquidated Damages, and one hundred and fourteen thousand forty-one

dollars and ten cents ($114,041.10), plus interest thereon at the rate of five percent (5%) per

annum from September 11, 2020, related to the Note and the Closing Loan, together with the

costs and disbursements of this action.

**AS AND FOR**
**A SECOND CAUSE OF ACTION**
**(Unjust Enrichment – Employment Agreement)**

47.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 46

above as if set forth more fully herein.

48.     As a direct and proximate result of the aforesaid, Plaintiff has been unjustly

enriched.

49.     By reason of the foregoing, Plaintiff is entitled to judgment against Defendant in

an amount to be determined at trial, but in no event less than three hundred and forty thousand

dollars ($340,000.00) in Liquidated Damages, and one hundred and fourteen thousand forty-one

dollars and ten cents ($114,041.10), plus interest thereon at the rate of five percent (5%) per

annum from September 11, 2020, related to the Note and the Closing Loan, together with the

costs and disbursements of this action.

**AS AND FOR**
**A THIRD CAUSE OF ACTION**
**(Breach of the Note and Closing Loan)**

50.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 49

above as if set forth more fully herein.

51.     Feinstein executed the Note.

52.     As of September 10, 2020, there remains an outstanding amount of one hundred and fourteen thousand forty-one dollars and ten cents ($114,041.10) due and owing under the Note and the Closing Loan.

53.     Despite demand, Feinstein has failed and refused to pay the amounts due and owing under the Note and the Closing Loan.

54.     By reason of the foregoing, Plaintiff is entitled to judgment against Defendant in an amount to be determined at trial, but in no event less one hundred and fourteen thousand forty-one dollars and ten cents ($114,041.10), plus interest thereon at the rate of five percent (5%) per annum from September 11, 2020, related to the Note and the Closing Loan, together with the costs and disbursements of this action.

**AS AND FOR**
**A FOURTH CAUSE OF ACTION**
**(Unjust Enrichment – Note and Closing Loan)**

55.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 54 above as if set forth more fully herein.

56.     As a direct and proximate result of the aforesaid, Plaintiff has been unjustly enriched.

57.     By reason of the foregoing, Plaintiff is entitled to judgment against Defendant in an amount to be determined at trial, but in no event less one hundred and fourteen thousand forty-one dollars and ten cents ($114,041.10), plus interest thereon at the rate of five percent (5%) per annum from September 11, 2020, related to the Note and the Closing Loan, together with the costs and disbursements of this action.

**AS AND FOR**
**A FIFTH CAUSE OF ACTION**
**(Breach of Oral Contract – Employee Loan)**

58.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 57 above as if set forth more fully herein.

59.     From on or about June 1, 2016 through June 1, 2017, Feinstein borrowed an additional one hundred and eighty-five thousand dollars ($185,000.00) from SS II constituting the Employee Loan.

60.     By agreement of SS II and Feinstein, SS II credited Feinstein's entire 2016 bonus against the Employee Loan, leaving a principal balance remaining under the Employee Loan of sixty-eight thousand four hundred thirty-three dollars ($68,433.00).

61.     Thereafter, Feinstein paid an additional six thousand dollars ($6,000.00) on the Employee Loan.

62.     As of September 10, 2020, there remains an outstanding amount of sixty-two thousand four hundred thirty-three dollars ($62,433.00) due and owing under the Employee Loan.

63.     By reason of the foregoing, Plaintiff is entitled to judgment against Defendant in an amount to be determined at trial, but in no event less than sixty-two thousand four hundred thirty-three dollars ($62,433.00), together with the costs and disbursements of this action.

**AS AND FOR**
**A SIXTH CAUSE OF ACTION**
**(Unjust Enrichment – Employee Loan)**

64.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 63 above as if set forth more fully herein.

65.     As a direct and proximate result of the aforesaid, Plaintiff has been unjustly enriched.

66.     By reason of the foregoing, Plaintiff is entitled to judgment against Defendant in an amount to be determined at trial, but in no event less than sixty-two thousand four hundred thirty-three dollars ($62,433.00), together with the costs and disbursements of this action.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

a.      on the First and Second Causes of Action, awarding Plaintiff damages against Defendants in an amount to be determined at trial, but in no event less than three hundred and forty thousand dollars ($340,000.00) in Liquidated Damages, and one hundred and fourteen thousand forty-one dollars and ten cents ($114,041.10), plus interest thereon at the rate of five percent (5%) per annum from September 11, 2020, related to the Note and the Closing Loan, together with the costs and disbursements of this action;

b.      on the Third and Fourth Causes of Action, awarding Plaintiff damages against Defendants in an amount to be determined at trial, but in no event less one hundred and fourteen thousand forty-one dollars and ten cents ($114,041.10), plus interest thereon at the rate of five percent (5%) per annum from September 11, 2020, related to the Note and the Closing Loan, together with the costs and disbursements of this action;

c.      on the Fifth and Sixth Causes of Action, awarding Plaintiff damages against Defendants in an amount to be determined at trial, but in no event less than sixty-two thousand four hundred thirty-three dollars ($62,433.00), together with the costs and disbursements of this action; and

d.      granting Plaintiff such other and further relief as the Court may deem just, proper, and equitable.

Dated:  White Plains, New York
        September 10, 2020

KURZMAN EISENBERG CORBIN & LEVER, LLP

By:_____

     Jeffrey S. Peters
*Attorneys for Plaintiff*
One North Broadway, 12th Floor
White Plains, New York 10601
914-285-9800
jpeters@kelaw.com